Filed 12/14/23  In re A.O. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re A.O., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>V.O.,<br><br>    Defendant and Appellant. | D082396<br><br>(Super. Ct. No. J520790A) |


APPEAL from an order of the Superior Court of San Diego County, Alexander M. Calero, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado and Eliza Molk, Deputy County Counsels, for Plaintiff and Respondent.

Almost 24 months after assuming emergency jurisdiction over A.O., the juvenile court terminated the parental rights of V.O. (Mother) over her then

three-year-old son at a contested Welfare and Institutions Code[1] section 366.26 hearing. Prior to the commencement of the hearing, the juvenile court denied Mother's section 388 petition for additional reunification services based on its belief that it lacked authority to grant the requested relief past the 24-month timeframe.

Mother's petition failed to make the threshold prima facie showing of changed circumstances or new evidence, and also failed to show that additional reunification services were in A.O.'s best interest. Any error in the court's limited review of Mother's petition was therefore harmless, and we affirm the June 26, 2023 order.

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A.O. was brought into protective custody at the age of 18 months when Mother was arrested at the Otay Port of Entry for transporting methamphetamine into the United States.[2] The original section 300 petition was filed on A.O.'s behalf on July 2, 2021, and on July 6, 2021, the juvenile court appointed minor's counsel and assumed temporary emergency jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). On July 7, 2021, A.O. moved into a home with licensed foster parents J. and J. and has remained in their care.

Following a series of continuances, the juvenile court held a combined six- and 12-month review hearing on September 30, 2022. The testimony and

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Law enforcement located over 100 pounds of methamphetamine hidden in Mother's vehicle. A.O. was in the vehicle when it was stopped, and Mother admitted to transporting drugs into the United States with A.O. in the vehicle on at least two other occasions.

2

evidence presented at that hearing revealed that while mother was living in Riverside County, she had limited and inconsistent in-person and virtual visitation with A.O. despite the caregivers' and Agency's efforts to facilitate those visits. During the visitation, A.O. was disconnected from the Mother and did not display excitement or recognition when he saw her.

Even after Mother moved to San Diego and supervised visitation was scheduled twice per week, A.O. was resistant to going. The foster parent needed to lie to A.O. to get him to go , and Mother described him as "grumpy" during the visits A.O. engaged minimally with Mother and would consistently gravitate toward his foster parent for play, comfort and connection. The social worker assigned to the case testified that there was "no interaction, no affection, and no interest" between Mother and A.O.

At the conclusion of that hearing, the juvenile court terminated Mother's court-mandated reunification services and set a section 366.26 hearing to implement a permanent plan for A.O. In making its ruling, the court noted that the case came to the court's attention as a result of Mother's poor judgment in deciding to transport drugs for financial gain and highlighted that, a year into the proceeding, she was found intoxicated and asleep in her car while A.O.'s sibling was in the backseat with the windows rolled up in 90-degree weather.[3] The court found, by clear and convincing evidence, that the return of the child to the custody of Mother would create a substantial risk of detriment to the child's physical or emotional well-being and that there was not a substantial probability that the child will be returned to the physical custody of Mother.

---

[3] According to the July 25, 2022 Addendum Report , Mother was arrested on July 21, 2022 and charged with felony child abuse for willful harm to a child in violation of Penal Code section 273a, subdivision (a).

On April 24, 2023, Mother's counsel informed the court of his intent to file a section 388 petition, and the contested section 366.26 hearing was scheduled for June 26, 2023.  On the morning of June 26, 2023, Mother filed her section 388 petition requesting that the court vacate the section 366.26 hearing and resume reunification services for an additional six months, to coincide with services that had been ordered for A.O.'s sibling.  Notably, Mother's petition made no mention of her imminent incarceration (mother had been sentenced to one year in prison on May 8, 2023 on a charge not specified in the record before us and was scheduled to surrender to authorities on June 29, 2023).

Prior to addressing Mother's section 388 petition, the court inquired whether it was able to provide six more months of reunification services to Mother when, in just four days, it would be a full two years since A.O. had been initially detained.  Mother's attorney offered preliminary arguments in support of the petition and suggested the court could invoke its power under section 352 to continue the section 366.26 hearing and order additional reunification services.  County counsel and minor's counsel contended section 352 could not properly be utilized at that juncture, and further argued that Mother failed to make a prima facie showing of changed circumstances or that additional reunification services were in A.O.'s best interest in light of her pending incarceration.

The juvenile court concluded it could not order additional reunification services past the two-year timeframe and effectively denied the petition:

> We find ourselves at a different situation . . . .  In four days, it will be two years since the date when [A.O.] was initially detained.
> I am of the opinion that [the] two-year period of time for providing reunification services is a hard stop[,] and the

4

court cannot provide reunification past that two-year timeframe. [¶] . . . [¶]

Because of that, the hard stop, the two-year period of time to provide reunification services, the court is not inclined to move forward on the 388 petition, despite the fact that there may be a change of circumstances.

Based on that two-year timeframe to provide reunification services, the court is of the position that it cannot move forward on the 388 [petition].

The court then proceeded with the section 366.26 hearing.[4]

Mother appeals from the court's order on her section 388 petition and the subsequent termination of her parental rights.

## DISCUSSION

A. *The juvenile court had the authority to consider mother's section 388 petition*

At the time of the contested section 366.26 permanency hearing, A.O.'s case had been pending for just under 24-months. Mother's reunification services had previously been terminated, and the focus of A.O.'s case had shifted away from reunification to his needs for permanency and stability. (See *In re Marilyn H.* (1993) 5 Cal.4th 295, 309 (*Marilyn H*).) Nonetheless, Mother could "revive the reunification issue" by filing a section 388[5] petition for modification of the court's prior order. (*Marilyn H., supra*, at p. 309.)

---

[4] The court rejected County Counsel's invitation to make a determination as to whether Mother had made a prima facie showing of changed circumstances and remarked that it could do so if the matter was remanded following appellate review.

[5] Section 388 permits a parent to petition the juvenile court to change or set aside a prior order "upon grounds of change of circumstance or new evidence." (§388, subd. (a)(1); see also Cal. Rules of Court, rule 5.570.)

A section 388 petition is an "escape mechanism" that is built into the dependency scheme to allow the court to consider new information even when the court is otherwise poised to implement a permanent plan in accordance with section 366.26. (*Marilyn H., supra,* 5 Cal.4th at p. 309.) "Sections 366.26 and 388, when construed together and with the legislative scheme as a whole, are reasonable and bear a substantial relation to the objective sought to be attained. The parent's interest in having an opportunity to reunify with the child is balanced against the child's need for a stable, permanent home. The parent is given a reasonable period of time to reunify and, if unsuccessful, the child's interest in permanency and stability takes priority. Even after the focus has shifted from reunification, the scheme provides a means for the court to address a legitimate change of circumstances while protecting the child's need for prompt resolution of his custody status. Thus, both substantive and procedural due process are satisfied." (*Marilyn H., supra,* 5 Cal.4th at p. 309.)

It is now well-established that a section 388 petition may be filed and heard at any time in an ongoing dependency case, up to and including the time scheduled for a section 366.26 hearing. (See *Marilyn H, supra,* 5 Cal.4th at p. 309; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1416 (*Jeremy W.*); *In re Hashem H.* (1996) 45 Cal.App.4th 1791, 1801 (*Hashem H.*); *In re Aljamie D.* (2000) 84 Cal.App.4th 424, 434 (*Aljamie D.*); *In re Lesly G.* (2008) 162 Cal.App.4th 904, 912-916.) A section 388 petition and the contested 366.26 hearing may be scheduled concurrently, "so long as the section 388 petition is decided first." (*Jeremy W., supra*, 3 Cal.App.4th at p. 1416, fn. 14). Mother's filing of the petition on the same day as the previously scheduled section 366.26 hearing did not alter the juvenile court's obligation to first consider

6

and rule on Mother's petition before proceeding to the section 366.26 hearing and disposition. (See *Aljamie D., supra*, at pp. 428, 434.)

B. *A prima facie showing is required*

Section 388, subdivision (a)(1) provides that a parent may petition the juvenile court "upon grounds of change of circumstance or new evidence . . . for a hearing to change, modify, or set aside any order of court previously made." Although a section 388 petition is liberally construed in favor of granting a hearing (*Marilyn H.*, *supra*, 5 Cal.4th at pp. 309-310), unless petitioner makes a prima facie showing of changed circumstances or new evidence *and* that the minors' best interests would be served by changing the juvenile court's order, the court need not order a hearing. (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250 (*Anthony W.*); *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 526 (*Kimberly F.*).)

C. *Mother failed to present new evidence or changed circumstances*

We review the court's summary denial of Mother's section 388 petition for abuse of discretion. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 460 (*Angel B.*).) Whether Mother's petition satisfied the threshold prima facie showing entitling her to a hearing (and reversal in this case) depends on the facts alleged in her petition, as well as the undisputed facts in the court's file. (See *Angel B., supra,* at p. 461.)

Mother's stated reasons for requesting modification of the court's order terminating reunification services is a June 20, 2023 order in another dependency case relating to A.O.'s sibling in which the court ordered reunification services to continue with the sibling at the six-month review hearing in that case, in addition to Mother's continuing participation in services at Vista Hill Parent Care. Mother contends that A.O. "deserves the opportunity to live with his mother and sibling in the most natural family

7

setting possible," and that her continued participation in services "would allow the bond between the minor and mother to grow."

The reunification order entered in the dependency case for A.O.'s sibling does not provide a viable basis for Mother's petition. Preliminarily, the June 20, 2023 order from the sibling's dependency case is not attached to Mother's petition, nor is it contained in the record on appeal. The petition merely attaches the first page of the Agency's Status Review Report submitted in advance of that hearing in which the Agency recommended the sibling remain in out-of-home care and that Mother be offered continued reunification services for the sibling to the 12-month date. Furthermore, the dependency case of A.O.'s sibling was still at the early six-month stage when reunification for the sibling was the court's focus. A.O.'s dependency proceeding, on the other hand, had been pending for almost 24 months and it had been nine months since reunification services had been terminated, and the focus of the case had shifted away from reunification to providing a permanent, stable placement for A.O. (See *Marilyn H.*, *supra*, 5 Cal.4th at p. 304.)

Also attached to Mother's petition are eight letters, from her outpatient treatment providers, her employer, her sponsor, and the director and house manager of her recovery home. Bearing various dates in March and April of 2023, the letters show that Mother had obtained and maintained employment for over two months, remained sober for approximately four months, and had been living in a recovery home while she continued to progress toward her treatment goals by taking various classes, attending therapy, and actively participating in her outpatient program.

Even if we credit all the evidence presented by Mother (see *In re Daijah T.* (2000) 83 Cal.App.4th 666, 673) and assume that she continued to progress

8

in her treatment goals while maintaining her sobriety and employment in May and June (see *Angel B., supra,* 97 Cal.App.4th at p. 465), the evidence presented, at best, merely shows changing circumstances rather than a genuine change of circumstances. (See *Kimberly F., supra,* 56 Cal.App.4th at p. 529; see also *In re Alayah J.* (2017) 9 Cal.App.5th 469, 482 (*Alayah J.*); *In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610 ["A mere prima facie showing of changing . . . circumstances was not enough to require or justify a hearing on return of the child to [mother] after two years."].) Notably, mother had not even completed her intensive outpatient treatment -- according to her substance use disorder counselor, she was "scheduled to advance into a lower level of care" on May 1, 2023. Mother did not submit any follow-up letters or testimony, and her pending incarceration would certainly interfere with her continuing participation in her outpatient treatment. Although the letters show that Mother is progressing and continuing in her efforts to improve in various areas of her life, we conclude that they fail to establish changed circumstances sufficient to warrant a section 388 hearing.

D. *Mother failed to show reunification was in A.O.'s best interests*

At this point of the proceedings, Mother's interest in the care, custody and companionship of the child was no longer paramount as the focus had already shifted away from reunification. (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) Although a parent may make a request for resuming reunification services after the 18-month mark, the court will only order continued reunification services in "exceptional situations in which the court determines that extending services and continuing reunification efforts beyond 18 months is not contrary to the child's interests." (*Michael G.* (2023) 14 Cal.5th 609, 632.)

9

While a section 388 petition must be liberally construed in favor of its sufficiency (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; Cal. Rules of Court, rule 5.570(a)), after reunification services have been terminated as they were in this case, there is a rebuttable presumption that continued foster care is in the best interest of the child. (*Angel B., supra*, 97 Cal.App.4th at p. 464.) In order to rebut the presumption, Mother would have to make a factual showing that A.O.'s best interests would be served by additional reunification services. (*Id.* at p. 465.)

Mother's unsupported and conclusory statement that A.O. "deserves the opportunity to live with his mother and sibling in the most natural family setting possible" is not a factual showing, and none of the letters submitted in support of her petition mention A.O.'s sibling bond nor do they specifically address A.O.'s needs or what would be in his best interests. For instance, the letter from the therapist at Vista Hill merely states that Mother is continuing in treatment and would "continue to work on maintaining growth of personal strengths, resilience, and coping skills as focusing on healing and stability while managing current responsibilities and towards the goal of child reunification."

Mother also generally claims she is "in a position to complete the services needed to address any concerns that the [Agency] may have", but her petition fails to specifically address how additional reunification services would be in A.O.'s best interest in light of his resistance to visitation and his strong connection to his foster parents. (*Alayah J., supra*, 9 Cal.App.5th at p. 478 ["To make a prima facie showing under section 388, the allegations of the petition must be specific regarding the evidence to be presented and must not be conclusory."].)

10

Mother's petition failed to make a prima facie showing that continuation of reunification services was in A.O.'s best interest. Unlike other cases in which a prima facie showing had been made, Mother's petition does not contain any professional recommendation that A.O. be returned to Mother's custody (cf. *Hashem H.*, *supra*, 45 Cal.App.4th at pp. 1797-1798), nor do any of the letters state that A.O. still had a strong bond with Mother or that she was presently able to provide suitable care for him (cf. *Jeremy W., supra*, 3 Cal.App.4th at pp. 1415-1416). The record is replete with examples of how A.O. was more bonded to his foster parents and was resistant to visiting with Mother , and Mother was just three days from her scheduled one-year incarceration.

E. *Harmless error*

In light of our conclusion that Mother failed to make the threshold prima facie showing, the trial court did not abuse its discretion by summarily denying Mother's section 388 petition, and any error by the trial court in its limited review of Mother's petition was harmless. "The California Constitution prohibits a court from setting aside a judgment unless the error has resulted in a 'miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*In re Celine R.* (2003) 31 Cal.4th 45, 59-60.) Reversal is permitted "only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error." (*Ibid.*)

There was no miscarriage of justice here. "[I]n order to prevent children from spending their lives in the uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate. [Citations.]" (*Marilyn H., supra*, at 5 Cal.4th at p. 308.)

11

## DISPOSITION

The June 26, 2023 order is affirmed.

KELETY, J.

WE CONCUR:

DATO, Acting P. J.

BUCHANAN, J.